ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL (IV)[1]

| | | |
|---|---|---|
| OMAR SAFAR HALABI<br>Parte Recurrida<br><br>v.<br><br>ASOCIACIÓN DE TITULARES MADEIRA ROW HOUSES, INC. Y OTROS<br>Parte Peticionaria | KLCE202400390<br><br><br><br>Consolidado con | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm. SJ2020CV03944<br><br>Por: Incumplimiento de contrato |
| OMAR SAFAR HALABI<br>Parte Recurrida<br><br>v.<br><br>ASOCIACIÓN DE TITULARES MADEIRA ROW HOUSES, INC. Y OTROS<br>Parte Recurrida<br><br>*CARLOS N. BERRÍOS CASILLAS Y RUBÉN SERGIO SOLANOT*<br>Parte Peticionaria | KLCE202400396 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm. SJ2020CV03944<br><br>Por: Incumplimiento de contrato |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Juez Barresi Ramos y la Jueza Rivera Pérez

Rivera Pérez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 13 de mayo de 2024.

Comparece la Asociación de Titulares de Madeira Row Houses, Inc. (en adelante, la Asociación) mediante un recurso de *Certiorari* en el caso **KLCE202400390** y nos solicita la revisión de la *Orden* emitida el 26 de enero de 2024 y notificada el 29 de enero de 2024, por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, TPI). Mediante este dictamen, el TPI declaró que "procede la moción del [recurrido Omar Safar Halabi] para dictar un embargo en ejecución de la sentencia".[2]

---
[1] Asignado de conformidad a la OAJP-2021-086 de 4 de noviembre de 2021.
[2] Apéndice, *Certiorari KLCE202400390*, págs. 143-144.

Número Identificador

SEN2024 _____

A su vez, comparecen el Sr. Carlos Noel Berríos Casillas y el Sr. Rubén Sergio Solanot Quironga mediante un recurso de *Certiorari* en el caso **KLCE202400396** y nos solicitan la revisión de la *Orden* emitida y notificada el 6 de marzo de 2024. Mediante este dictamen, el TPI declaró No Ha Lugar la *Moción de Reconsideración* presentada el 13 de febrero de 2024 por los Sres. Berríos Casillas y Solanot Quironga[3] y, en consecuencia, se sostuvo en la *Orden* del 26 de enero de 2024.[4]

Por los fundamentos que expondremos, se expide el auto de *certiorari* y se revoca la *Orden* recurrida.

**I.**

El 28 de julio de 2020, el Sr. Omar Safar Halabi (en adelante, el Sr. Safar Halabi o parte recurrida) presentó una *Demanda* sobre incumplimiento de contrato y condiciones restrictivas en contra de la Asociación y los miembros de la Junta de Directores de dicha asociación en su carácter personal: el Sr. Rubén Sergio Solanot Quironga, el Sr. Roberto J. Alfonso Rivera y el Sr. Noel Berríos Casillas.[5] En la demanda, el Sr. Safar Halabi alegó que era titular de un apartamento del proyecto residencial Medeira Row Houses ubicado en el sub-barrio Ocean Park del barrio Santurce del municipio de San Juan, el cual estaba sujeto a las condiciones restrictivas establecidas en la Escritura Núm. 26 sobre *Constitución de Condiciones Restrictivas* otorgada el 12 de septiembre de 2005 (en adelante, Escritura Núm. 26). Según alegó, en la Asamblea Anual de Titulares celebrada el 21 de septiembre de 2018, se presentó la propuesta del presupuesto anual de 2018-2019, en la cual se establecía un aumento de $1,200.00 a $1,490.00 a la cuota de mantenimiento anual de la urbanización. Dicho aumento fue

---

[3] Apéndice, *Certiorari KLCE202400390*, págs. 155-163.
[4] Véase nota al calce 2.
[5] Apéndice, *Certiorari KLCE202400390 y KLCE202400396*, págs. 1-4 (ambos).

aprobado por cuatro (4) de los (5) titulares del proyecto residencial, con la objeción del Sr. Safar Halabi.[6] El Sr. Safar Halabi impugnó la aprobación del aumento a la cuota de mantenimiento anual bajo el fundamento de que se requería el consentimiento unánime de los titulares para aumentar la cuota de mantenimiento anual en más de un diez por ciento (10%), conforme al Artículo VI (b) de la Escritura Núm. 26.[7]

El Sr. Safar Halabi solicitó como remedio en la demanda que se dejara sin efecto el aumento aprobado en la Asamblea Anual de Titulares; y se ordenara el reembolso de lo pagado en exceso por dicho concepto.[8]

Luego de varios trámites procesales, entre estos la presentación por los peticionarios de sus respectivas alegaciones responsivas, el 23 de junio de 2022, las partes presentaron conjuntamente *Moción Conjunta Solicitando se Emita Sentencia*, en la cual estipularon los hechos del caso, alegaron que la controversia era una de derecho, expusieron sus respectivas posiciones y solicitaron que se dictara sentencia.[9]

El 14 de noviembre de 2022, notificada el 15 de noviembre de 2022, el TPI dictó *Sentencia*, mediante la cual declaró Ha Lugar la *Demanda* presentada por el Sr. Safar Halabi y, en consecuencia, se declaró nula y se dejó sin efecto la aprobación del aumento a la cuota de mantenimiento anual.[10] En su dictamen, el TPI acogió las estipulaciones de hechos de las partes y, luego de un análisis de las cláusulas de la Escritura Núm. 26 en cuestión, concluyó y resolvió lo siguiente:

> Después de un análisis detenido del Art. VI de la Escritura Núm. 26 de Constitución de Condiciones

---

[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] Apéndice, *Certiorari KLCE202400396, págs. 123-125.*
[10] Apéndice, *Certiorari KLCE202400390 y KLCE202400396*, págs. 13-19; 129-135 (respectivamente).

Restrictivas, resolvemos que al demandante le asiste la razón. El inciso (b) del Art. VI dispone lo siguiente:

[...]

Esto quiere decir que la Asociación de Titulares de Madeira Row Houses tiene el poder de fijar al principio de cada año calendario o fiscal una cuota de mantenimiento para tal año. La Asociación de Titulares tiene el poder de aumentar o disminuir tal cuota dentro de cualquier momento del año o al siguiente año fiscal. No obstante, si la Asociación de Titulares estima necesario disminuir o aumentar la cuota de mantenimiento anual, y este aumento o disminución excede el 10% de la cuota de mantenimiento anual para tal año, se necesitará el consentimiento unánime de los titulares. [...] El inciso (m) confirma que la cuota de mantenimiento anual no será obligatoriamente fija, si no que la Junta de Directores puede convocar una asamblea de manera extraordinaria para proponer un aumento a la cuota de mantenimiento, si lo estima apropiado. Véase que el lenguaje utilizado es "proponer un aumento". Esto quiere decir que el aumento propuesto deberá llevarse a cabo bajo las disposiciones del inciso (b), es decir, con el consentimiento unánime de los titulares, si el aumento propuesto excede el 10% de la cuota de mantenimiento establecida para tal año.[11]

Inconforme con dicha determinación, la Asociación acudió ante nos el 14 de diciembre de 2022 mediante el recurso de *Apelación* **KLAN202201015**. El 7 de febrero de 2023, el Tribunal de Apelaciones dictó *Sentencia* confirmando la determinación del foro apelado.[12] De este dictamen se acudió ante el Tribunal Supremo mediante el caso **CC-2023-0154**, en el cual, el más Alto Foro, el 14 de abril de 2023 declaró No Ha Lugar la solicitud de *certiorari* presentada por la parte peticionaria.[13]

Así las cosas, la parte aquí recurrida presentó el 4 de enero de 2024 *Moción para Informar Incumplimiento y Solicitud de Orden para Continuar Proceso de Ejecución Contra Codemandados*.[14] Entre otros extremos, el Sr. Safar Halabi solicitó la ejecución de

---

[11] *Íd.*

[12] Apéndice, *Certiorari KLCE202400390 y KLCE202400396*, págs. 20-29; 161-172 (respectivamente).

[13] Apéndice, *Certiorari KLCE202400390 y KLCE202400396*, pág. 30; 158-160 (respectivamente). El mandato en este caso por el Tribunal Supremo fue remitido el 25 de mayo de 2023 al foro primario.

[14] Apéndice, *Certiorari KLCE202400390 y KLCE202400396*, págs. 31-34; 173-176 (respectivamente).

$24,880.00, más $1,692.72 por concepto del interés legal acumulado desde que se emitió *Sentencia* a su favor el 15 de noviembre de 2022 hasta el 3 de enero de 2024, más los gastos que se incurran en la ejecución de la sentencia, mediante el embargo de cualesquiera cuentas bancarias de Sr. Solanot Quironga, Sr. Berríos Casillas y Sr. Alfonso Rivera.

El 11 de enero de 2024, la Asociación presentó *Oposición a Moción para Informar Incumplimiento y Solicitud de Orden para Continuar Proceso de Ejecución Contra Codemandados*[15] y el 19 de enero de 2024 los Sres. Berríos Casillas y Solanot Quironga se opusieron mediante *Oposición Conjunta a Moción para Informar Incumplimiento [...]*.[16]

En su escrito la Asociación expuso que no procedía lo solicitado por el Sr. Safar Halabi en cuanto a la ejecución de la sentencia dictaminada por el TPI el 15 de noviembre de 2022, debido a que para el 30 de abril de 2023 la Asociación había acreditado a la parte recurrida los $24,880.00 a su cuenta por concepto de reembolso de lo pagado en exceso por la cuota de mantenimiento. La Asociación acompañó su moción con una Declaración Jurada suscrita por la Sra. María Marcos Ocasio, funcionaria de la compañía MMG Puerto Rico, LLC, contadora de la Asociación, explicando que la suma de los $24,880.00 se componía de las siguientes partidas:

> Entre el 1 de octubre de 2018 y el 1 de diciembre de 2020 se hicieron 27 cargos correspondientes a la cuota de mantenimiento por la suma de $1,490 mensuales, o sea $290 en exceso de $1,200, para un total de $7,830 cobrado[s] en exceso.

> Entre el 1 de enero de 2021 y el 1 de junio de 2022 se hicieron 18 cargos correspondientes a la cuota de mantenimiento por la suma de $1,550 mensuales, o sea $350 en exceso de $1,200, para un total de $6,300 cobrados en exceso.

---

[15] Apéndice, *Certiorari KLCE202400390 y KLCE202400396*, págs. 35-40; 183-185 (respectivamente).
[16] Apéndice, *Certiorari KLCE202400390 y KLCE202400396*, págs. 41-46; 177-182 (respectivamente).

Entre el 1 de julio de 2022 y el 1 de abril de 2023, se hicieron 10 cargos correspondientes a la cuota de mantenimiento por la suma de $2,275 mensuales, o sea $1,075 en exceso de $1,200, para un total de $10,750 cobrados en exceso.

Además, la Asociación expuso que los demás asuntos sobre cobro de dinero contra el Sr. Safar Halabi se debían ventilar en el caso SJ2022CV11094 instado sobre dicho asunto y que no procedían los intereses legales, ni gastos solicitados para la ejecución de la sentencia por haber sido satisfecha a las dos (2) semanas de la denegatoria del Tribunal Supremo.

Por su parte, los Sres. Berríos Casillas y Solanot Quironga fundamentaron su escrito en oposición en que la sentencia del TPI ya había sido satisfecha por la Asociación y que ellos no respondían en su carácter personal al Sr. Safar Halabi por el reembolso de lo pagado en exceso a la Asociación, entre otros asuntos.

Luego de que el TPI le concediera término para replicar en conjunto, el 26 de enero de 2024, el Sr. Safar Halabi presentó *Réplica en Cumplimiento de Órdenes*, mediante la cual alegó que la Asociación no podía satisfacer la *Sentencia* mediante la aplicación de un crédito para el pago de otras deudas que según alega no eran líquidas ni exigibles y que eran objeto de impugnación en otro caso (lo relacionado al crédito concedido a los demás titulares y las derramas decretadas).[17]

El 26 de enero de 2024, notificada el 29 de enero de 2024, el TPI dictó *Orden* en la cual dispuso de lo siguiente que "[analizadas las comparecencias de las partes, **resolvemos que procede la ejecución de la sentencia** por parte del demandante. [...] Vemos de la comparecencia de la Asociación de Titulares de Madeira Row Houses, Inc. que el reembolso no ha se ha verificado, por ello,

---

[17] Apéndice, *Certiorari KLCE202400390 y KLCE202400396*, págs. 110-115; 189-194 (respectivamente).

**resolvemos que procede la moción del demandante para dictar un embargo en ejecución de la sentencia".**[18]

Inconforme, el 30 de enero de 2024, la Asociación presentó *Moción de Reconsideración*[19] en la cual reiteró que la *Sentencia* había sido satisfecha el 30 de abril de 2023, fecha en la cual se habían acreditado los $24,880.00 en la cuenta del Sr. Safar Halabi. La Asociación acompañó una segunda declaración jurada, suscrita por la Sra. María Marcos Ocasio, funcionaria de MMG Puerto Rico LLC., declarando que había acreditado los $24,880.00 al Sr. Safar Halabi y, a su vez, acompañó copia del estado de cuenta que así lo acreditaba. Además, la Asociación reiteró que las controversias planteadas por el Sr. Safar Halabi debían ventilarse en el caso SJ2022CV11094. Así las cosas, ese mismo día, el TPI declaró No Ha Lugar la solicitud de reconsideración presentada por la Asociación.[20]

Por su parte, el 13 de febrero de 2024, los Sres. Berríos Casillas y Solanot Quironga, presentaron en tiempo *Moción de Reconsideración* sobre la orden de ejecución de sentencia.[21] A esos fines, argumentaron que la sentencia de la cual solicitaban ejecución ya había sido satisfecha y que para el mes de febrero de 2023 el propio Sr. Safar Halabi había solicitado un ajuste en su estado de cuentas mediante correo electrónico remitido a MMG Puerto Rico LLC, compañía que ofrece los servicios de administración a la Asociación. Por último, argumentaron que el Sr. Safar Halabi estaba impedido de ir en contra de sus propios actos debido a que solicitó que el reembolso se hiciera mediante un crédito a su estado de cuenta. Ese mismo día, el Sr. Alfonso Rivera también

---

[18] Apéndice, *Certiorari KLCE202400390 y KLCE202400396*, págs. 143-145; 222-224 (respectivamente).

[19] Apéndice, *Certiorari KLCE202400390 y KLCE202400396*, págs. 146-153; 225-232 (respectivamente).

[20] Apéndice, *Certiorari KLCE202400390,* pág. 154.

[21] Apéndice, *Certiorari KLCE202400390 y KLCE202400396,* págs. 155-191; 233-240 (respectivamente).

solicitó la reconsideración de la orden de ejecución mediante la cual argumentó que no procedía la ejecución de los bienes de los directores en su capacidad personal; que al momento en el cual se dictó *Sentencia* el Sr. Safar Halabi, a su vez, le debía a la Asociación $22,867.00 y que se le acreditó dicha cantidad a la deuda y que los $2,013.00 restantes fueron acreditados a la cuenta para cubrir los próximos cargos de mantenimiento y que la sentencia fue satisfecha por medio de compensación.[22]

El 5 de marzo de 2024, el Sr. Safar Halabi presentó *Réplica a Solicitudes de Reconsideración […]* mediante la cual reiteró sus planteamientos.[23] Al día siguiente, el TPI emitió *Orden* denegando todas las reconsideraciones pendientes.[24]

El 12 de marzo de 2024, el Sr. Safar Halabi presentó *Solicitud de Orden y Moción Informativa Sobre la Necesidad de Incurrir en Gastos de Ejecución para Descubrir Bienes.*[25] En síntesis, solicitó que se ordenara a los señores Berríos Casillas, Solanot Quironga y Alfonso Rivera proveer información sobre sus seguros sociales para incluirlo en el señalamiento de bienes a ser embargados o, en la alternativa, tomarles deposiciones con el propósito de identificar bienes para hacer efectiva la *Sentencia.* A los dos días después, la Asociación presentó una *Urgente Moción Aclaratoria Sobre el Cumplimiento de la Sentencia y en Respuesta a Réplica a Solicitudes de Reconsideración y Solicitud de Vista Oral.*[26] En su moción, la Asociación le aclaró al foro primario que en ánimo de cumplir con la *Sentencia,* el 30 de abril de 2023 le acreditó a la cuenta del Sr. Safar Halabi los $24,880.00 de los meses que había cobrado en exceso

---

[22] Apéndice, *Certiorari KLCE202400390*, págs. 192-197.
[23] Apéndice, *Certiorari KLCE202400390 y KLCE202400396*, págs. 198-204; 243-249 (respectivamente).
[24] Apéndice, *Certiorari KLCE202400390 y KLCE202400396*, pág. 205; 242 (respectivamente).
[25] Apéndice, *Certiorari KLCE202400390 y KLCE202400396*, págs. 207-209; 250-252 (respectivamente).
[26] Apéndice, *Certiorari KLCE202400390*, págs. 212-221.

debido a que no cuentan con efectivo suficiente para hacer un reembolso en efectivo y que debido a que el Sr. Safar Halabi no había realizado pago alguno desde el 31 de octubre de 2023 el crédito se había consumido.

Así las cosas, el 19 de marzo de 2024 el TPI mediante *Orden* señaló el asunto post sentencia para vista por videoconferencia para el 21 de mayo de 2024, a las 10:30 am.[27]

Inconforme con dicha determinación, la Asociación acudió ante nos el 4 de abril de 2024 mediante el recurso **KLCE202400390**, en el cual señala el siguiente error:

> Erró el TPI al ordenar la ejecución de una sentencia que ya fue satisfecha mediante un crédito en la cuenta del señor Halabi, según él mismo lo solicitó.
>
> A. La sentencia fue satisfecha mediante un crédito que realizó la Asociación en la cuenta del señor Halabi verificado el 30 de abril de 2023.
>
> B. La sentencia fue satisfecha de acuerdo al método que solicitó el señor Halabi en su correo [electrónico] del 14 de febrero de 2023, es decir, un ajuste en su estado de cuenta.
>
> C. Cualquier disputa sobre el cobro de dinero por la Asociación contra el señor Halabi debe ventilarse en el caso independiente sobre cobro de dinero, es decir, el caso SJ2022CV11094.
>
> D. Ordenar la ejecución de la Sentencia con stituiría un grave fracaso a la justicia.

Por otra parte, los Sres. Berríos Casillas y Solanot Quironga comparecen ante este foro mediante el recurso **KLCE202400396**, en el cual plantean el siguiente error:

> Erró el Tribunal de Primera Instancia al ordenar la ejecución de una sentencia que ya fue satisfecha.

El 9 de abril de 2024, emitimos una *Resolución* mediante la cual ordenamos la consolidación de ambos recursos y le concedimos término para que las partes recurridas presentaran su oposición.

---

[27] Apéndice, *Certiorari KLCE202400390*, a la pág. 236.

El 29 de abril de 2024, la parte aquí recurrida presentó *Alegato de la Parte Recurrida*. Así contando con la comparecencia de todas las partes procedemos a resolver.

**-II-**

**A.**

El recurso de *certiorari* es "un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior". *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012). Véase, además, *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009); *García v. Padró*, 165 DPR 324, 334 (2005). En el ámbito judicial, el concepto discreción "no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho". *IG Builders et al. v. BBVAPR*, supra, pág. 338. La discreción, "es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *800 Ponce de León v. AIG*, supra, a la pág. 174.

En el caso particular del Tribunal de Apelaciones, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, limita los asuntos interlocutorios que podemos revisar mediante un recurso de *certiorari*, bajo el entendimiento de que estos pueden esperar hasta la conclusión del caso para ser revisados en apelación. *IG Builders et al. v. BBVAPR*, supra, pág. 337. Al respecto, la Regla 52.1 de Procedimiento Civil, *supra*, dispone específicamente que el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de Procedimiento Civil, 32 LPRA Ap. V, R. 56 y 57, o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción

a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. *Íd.* Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. *Íd.*

A su vez, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, establece los criterios que el Tribunal de Apelaciones deberá tomar en consideración al determinar si procede la expedición de un recurso de *certiorari* o de una orden de mostrar causa. Estos son:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. Regla 40 del Reglamento del Tribunal de Apelaciones, *supra.*

La precitada regla manda que, como foro apelativo, evaluemos si alguna de las instancias enumeradas anteriormente es de aplicación a la petición de *certiorari*. De alguna estar presente,

podemos ejercer nuestra discreción e intervenir con el dictamen recurrido. Por el contrario, estaremos impedidos de expedir el auto, y por lo tanto deberá prevalecer la determinación del foro recurrido. Los criterios antes transcritos sirven de guía para poder determinar, de manera sabia y prudente, si procede o no intervenir en el caso en la etapa del procedimiento en que se encuentra el caso. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008).

De ordinario, los tribunales apelativos no debemos intervenir con las decisiones discrecionales de un Tribunal de Primera Instancia a menos que se demuestre que dicho foro incurrió en un abuso de discreción, y que nuestra intervención evitaría un perjuicio sustancial. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 435 (2013). En todo caso, el criterio rector al momento de evaluar si un tribunal ha abusado de su discreción es la razonabilidad de la determinación impugnada, y su fundamento en un sentido llano de justicia. *Íd.,* págs. 434-435.

**B.**

El mecanismo de ejecución de sentencia le imprime continuidad a todo proceso judicial que culmina con una sentencia. *Mun. De San Juan v. Prof. Research,* 171 DPR 219, 247-248 (2007). Es necesario recurrir a la ejecución forzosa de una sentencia cuando la parte obligada incumple con los términos de la sentencia. *Id.* A esos efectos, la Regla 51.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 51.1, dispone lo siguiente:

> **"La parte a cuyo favor se dicte sentencia podrá ejecutarla mediante el procedimiento fijado en esta Regla 51, en cualquier tiempo dentro de cinco (5) años de ésta ser firme.** Expirado dicho término, la sentencia podrá ejecutarse mediante autorización del tribunal, a moción de parte y previa notificación a todas las partes. Si después de registrada la sentencia se suspende su ejecución por una orden o sentencia del tribunal, o por efecto de ley, el tiempo durante el cual ha sido suspendida dicha ejecución deberá excluirse del cómputo de los cinco (5) años durante los cuales podrá expedirse el mandamiento de ejecución."

Por su parte, la Regla 51.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 51.3, dispone en casos de sentencias para realizar actos específicos lo siguiente:

> (a) Cuando una sentencia ordene a una parte transferir el dominio de terrenos y otorgar escrituras y otros documentos, o realizar cualquier otro acto específico, y dicha parte no cumpla tal orden dentro del término especificado, el tribunal podrá ordenar que otra persona por él designada realice el acto a expensas de la parte que incumple. Cuando el acto haya sido realizado de este modo, tendrá el mismo efecto que si la parte lo hubiese ejecutado.
>
> Si es necesario, a solicitud de la parte con derecho al cumplimiento y previa orden del tribunal, el Secretario o Secretaria expedirá, además, un mandamiento de embargo contra los bienes de la parte que incumpla para obligarla al cumplimiento de la sentencia.
>
> El tribunal podrá, en casos apropiados, procesar a dicha parte por desacato. Asimismo, en lugar de ordenar el traspaso de los bienes, podrá dictar sentencia despojando del título a una parte y transfiriéndolo a otra, y dicha sentencia tendrá el efecto de un traspaso de dominio ejecutado de acuerdo con la ley.
>
> Cuando una orden o una sentencia disponga el traspaso de la posesión, la parte a cuyo favor se registre tendrá derecho a un mandamiento de ejecución previa solicitud al Secretario o Secretaria.
>
> En todos los casos en que el tribunal ordene una venta judicial de bienes muebles o inmuebles, dicha orden tendrá la fuerza y efecto de un auto que dispone la entrega física de la posesión, debiendo consignarse así en el fallo u orden para que el(la) alguacil(a), u otro(a) funcionario(a) proceda a poner al(a la) comprador(a) en posesión de la propiedad vendida dentro del plazo de veinte (20) días desde la venta o la subasta, sin perjuicio de los derechos de terceros que no hayan intervenido en el procedimiento.
>
> [...]

Por otro lado, la Regla 51.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 51.4, establece lo relacionado con los procedimientos suplementarios y en lo pertinente le reconoce al foro primario la facultad de dictar cualquier orden que considere justa y necesaria para la ejecución de una sentencia y para salvaguardar los derechos del acreedor, del deudor y del tercero en el proceso. En específico dispone lo siguiente:

El(La) acreedor(a) declarado(a) por sentencia, o su cesionario, podrá en auxilio de la sentencia o de su ejecución, interrogar a cualquier persona, incluso al(a la) deudor(a) declarado(a) por sentencia, de acuerdo con lo dispuesto en estas reglas para la toma de deposiciones. Si la deposición se realiza mediante preguntas escritas, la citación para la toma de la deposición podrá disponer que no es necesaria la comparecencia personal del(de la) deudor(a) o deponente en virtud de la citación, siempre que con anterioridad a la fecha fijada para la toma de la deposición éste o ésta haga entrega al(a la) acreedor(a) por sentencia, o a su abogado o abogada de sus contestaciones juradas a las preguntas escritas que se le hayan notificado. **El tribunal podrá dictar cualquier orden que considere justa y necesaria para la ejecución de una sentencia y para salvaguardar los derechos del(de la) acreedor(a), del(de la) deudor(a) y de terceros en el proceso.**

A su vez, la Regla 56.1 de Procedimiento Civil, 32 LPRA Ap. V. R. 56.1, regula los procedimientos al alcance de las partes para asegurar la efectividad de la sentencia que haya obtenido a su favor. Dicho estatuto le confiere discreción al tribunal para conceder o denegar tal remedio o medida cautelar. En lo pertinente establece:

> **En todo pleito antes o después de sentencia,** por moción del reclamante, el tribunal podrá dictar cualquier orden provisional que sea necesaria para asegurar la efectividad de la sentencia. **El tribunal podrá conceder el embargo,** el embargo de fondos en posesión de un tercero, la prohibición de enajenar, la reclamación y entrega de bienes muebles, la sindicatura, una orden para hacer o desistir de hacer cualesquiera actos específicos, o podrá ordenar cualquier otra medida que estime apropiada, según las circunstancias del caso. En todo caso en que se solicite un remedio provisional, el tribunal considerará los intereses de todas las partes y dispondrá según requiera la justicia sustancial. (Énfasis suplido)

El propósito de la anotación de embargo es proteger la efectividad de los dictámenes judiciales y mantener el estatus quo existente al momento de iniciarse el pleito. *Vargas v. González,* 149 DPR 859, 865 (1999). En virtud de la Regla 56.1, *supra,* se pretende asegurar la sentencia que, en su día, pudiera recaer a favor del demandante. El embargo tiene como fin preservar los bienes del deudor, e impedir su traspaso y ocultación, para que, de este modo, quien reclame un derecho contra este, pueda ejecutar

satisfactoriamente un mandato judicial. *García v. The Commonwealth Ins. Co.*, 118 DPR 380, 387 (1987); *Vda. de Galindo v. Cano,* 108 DPR 277, 280-281 (1979).

Con relación al embargo, en *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, 133 DPR 881, 894 (1993), se indicó que su objetivo es el de proteger la efectividad de los dictámenes judiciales y mantener el estatus quo existente al momento de iniciarse el pleito. *Id.* El embargo puede efectuarse tanto en cuanto a bienes inmuebles como a bienes muebles, estén éstos en posesión del demandado o de un tercero, siempre que pertenezcan al demandado. Lic. Rafael Hernández Colón, Práctica Jurídica de Puerto Rico, San Juan, Michie de Puerto Rico, Inc., 1997, pág. 127.

Sobre este tema, nuestro Tribunal Supremo ha expresado que el embargo preventivo "es una interdicción jurídica en el patrimonio del deudor, decretada a petición ex parte del acreedor reclamante. Uno de sus efectos procesales es el de sujetar o adscribir los bienes embargados al cumplimiento de la obligación o reclamación en el proceso principal, es decir, asegurar la efectividad de la sentencia que haya de dictarse en el caso de prosperar la acción ejercitada. Como medida cautelar o asegurativa, su vida o eficacia depende de la acción entablada". *Alum Torres v. Campos del Toro*, 89 DPR 305, 321 (1963). Su propósito es preservar los bienes del deudor e impedir su traspaso y ocultación de manera que quien reclame un derecho contra éste, pueda ejecutar satisfactoriamente un mandato judicial. *García v. The Commonwealth Ins. Co.*, supra; *Vda. de Galindo v. Cano*, supra.

Los criterios que tendrán que tomar en consideración los tribunales al momento de conceder o denegar una orden en aseguramiento de sentencia son: (1) que sea provisional; (2) que tenga el propósito de asegurar la efectividad de la sentencia que en su día se pueda dictar; y, (3) que se tomen en consideración los

intereses de todas las partes, según lo requiera la justicia sustancial. J. A. Cuevas Segarra, Tratado de Derecho Procesal Civil, San Juan, Publicaciones JTS, Tomo II, 2000, pág. 934; *Freeman v. Tribunal Superior*, 92 DPR 1, 25 (1965).

Por su parte, la Regla 56.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 56.2, añade que **"[n]o se concederá, modificará o anulará, ni se tomará providencia alguna sobre un remedio provisional, sin notificar a la parte adversa y sin celebrar una vista,** excepto según se dispone en las Reglas 56.4". De esta forma, como regla general, en todo caso en el cual se solicite algún remedio provisional se deberá notificar a la parte adversa y celebrar una vista previa. *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, supra, pág. 896. De igual modo, el Tribunal Supremo de Puerto Rico sentó la norma de que siempre que se ordene un embargo u otra medida provisional es necesario celebrar una vista previa, a menos que la parte interesada en tales remedios demuestre: (1) tener un interés propietario previo sobre la cosa embargada; (2) la existencia de circunstancias extraordinarias; y (3) la probabilidad de prevalecer, todo ello acreditado por prueba fehaciente de la que se desprenda que la deuda es líquida, está vencida y es exigible. *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, supra.

La Regla 56.4, 32 LPRA Ap. V, R. 56.4, sobre el embargo o prohibición de enajenar dispone lo siguiente:

> Si se cumple con los requisitos de la Regla 56.3, el tribunal deberá expedir, a moción de la parte reclamante, una orden de embargo o de prohibición de enajenar.
>
> No se podrá expedir una orden de embargo o prohibición de enajenar sin previa notificación y vista, excepto que la parte reclamante demuestre tener un previo interés propietario sobre la cosa embargada, la existencia de circunstancias extraordinarias o la probabilidad de prevalecer mediante prueba documental fehaciente que demuestre que la deuda es líquida, vencida y exigible.
>
> Cualquier parte afectada por cualquier orden dictada sin notificación y vista, podrá presentar en

cualquier tiempo una moción para que modifique o anule la orden, y dicha moción se señalará para vista en la fecha más próxima posible y tendrá precedencia sobre todos los demás asuntos. A los propósitos de dicha vista, una notificación de dos días a la parte que obtuvo la orden, o la notificación más corta que el tribunal prescriba, será suficiente.

En el caso de bienes inmuebles, tanto el embargo como la prohibición de enajenar se efectuarán anotándolos en el registro de la propiedad y notificándolos a la parte demandada. En el caso de bienes muebles, la orden se efectuará depositando los bienes de que se trate con el tribunal o con la persona designada por el tribunal bajo la responsabilidad de la parte reclamante. El tribunal podrá ordenar, a petición de cualquiera de las partes, la venta en pública subasta de los bienes fungibles cuyo embargo o prohibición de enajenar se haya decretado, consignándose el producto de su venta en la forma dispuesta por el tribunal.

La parte que solicite la designación de una persona como depositario(a) de los bienes a embargarse deberá acreditar su dirección y teléfono, si lo tiene, tanto residencial como de empleo o negocio. El(La) depositario(a) designado(a) deberá notificar inmediatamente al tribunal, bajo el epígrafe del caso, cualquier cambio de dirección o número de teléfono, de sitio o condición de los bienes.

### III.

La Asociación acudió ante nos mediante el recurso **KLCE202400390**, en el cual señala que erró el TPI al ordenar la ejecución de una sentencia que ya fue satisfecha mediante un crédito en la cuenta del Sr. Safar Halabi según había sido solicitado por este y que el ordenar la ejecución de la sentencia constituiría un grave fracaso a la justicia. Por otra parte, los Sres. Berríos Casillas y Solanot Quironga en el recurso **KLCE202400396**, plantean que erró el foro primario al ordenar la ejecución de la sentencia que ya fue satisfecha. Les asiste la razón. Veamos.

Por estar íntimamente relacionados los señalamientos de error en ambos recursos de *certiorari* los procederemos a discutir en conjunto.

Según surge del trámite procesal, en el caso de marras, el 14 de noviembre de 2022, notificada el 15 de noviembre de 2022, el TPI dictó *Sentencia*, mediante la cual declaró Ha Lugar la *Demanda*

presentada por el Sr. Safar Halabi por incumplimiento de contrato y condiciones restrictivas en contra de la Asociación y los miembros de la Junta de Directores de dicha asociación en su carácter personal y, en consecuencia, se declaró nula y se dejó sin efecto la aprobación del aumento a la cuota de mantenimiento anual.

Luego de los correspondientes trámites apelativos y de que la *Sentencia* del caso adviniera final y firme el Sr. Safar Halabi solicitó mediante moción un embargo en ejecución de sentencia. A esta solicitud de embargo en ejecución de sentencia se opusieron las partes peticionarias y el foro primario, sin trámites ulteriores, mediante la *Orden* emitida el 26 de enero de 2024 y notificada el 29 de enero de 2024, dictaminó que procedía dictar un embargo en ejecución de la sentencia a favor del Sr. Safar Halabi. Respecto a dicha determinación, todas las solicitudes de reconsideración que fueron presentadas el foro primario las declaró No Ha Lugar.

Por tratarse los errores señalados de una orden de embargo al amparo de los remedios dispuestos en la Regla 56 de Procedimiento Civil, *supra*, es una de las instancias en las cuales en virtud de Regla 52.1 de Procedimiento Civil, *supra*, podemos intervenir. De la evaluación de los criterios de la Regla 40 de nuestro Reglamento, *supra,* adelantamos que la determinación del TPI fue una contraria a derecho y violatoria del debido proceso de ley.

De conformidad a lo dispuesto en la Regla 56.2 de Procedimiento Civil, *supra,* se dispone que **"[n]o se concederá, modificará o anulará, ni se tomará providencia alguna sobre un remedio provisional, sin notificar a la parte adversa y sin celebrar una vista"**. De esta forma, como regla general, en todo caso en el cual se solicite algún remedio provisional se deberá notificar a la parte adversa y celebrar una vista previa. *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, supra, pág. 896. De igual modo, el Tribunal Supremo de Puerto Rico sentó la norma de que siempre

que se ordene un embargo u otra medida provisional es necesario celebrar una vista previa, a menos que la parte interesada en tales remedios demuestre: (1) tener un interés propietario previo sobre la cosa embargada; (2) la existencia de circunstancias extraordinarias; y (3) la probabilidad de prevalecer, todo ello acreditado por prueba fehaciente de la que se desprenda que la deuda es líquida, está vencida y es exigible. *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, supra.

Del análisis del caso es forzoso concluir que el foro primario incumplió con el requisito de la celebración de una vista previa antes del ordenar un embargo en aseguramiento de sentencia como ocurrió en el caso de marras. El TPI debió antes de emitir su orden de 26 de enero de 2024 celebrar la vista requerida por la Regla 56.4 de Procedimiento Civil, *supra,* en la cual las partes hubieran tenido la oportunidad de presentar prueba y esgrimir sus planteamientos respecto a si procedía el remedio de embargo en aseguramiento de sentencia o si, por el contrario, la sentencia había sido cumplida. Es importante puntualizar que, luego que todas las solicitudes de reconsideración respecto a la orden recurrida fueron declaradas No Ha Lugar, el foro primario dictó *Orden* señalando vista sobre el asunto post sentencia para el 21 de mayo de 2024, a las 10:30 am; sin embargo, no dejó sin efecto la orden recurrida.

Por tanto, procede la revocación de la *Orden* recurrida que dictaminó que en el caso de autos procedía dictar un embargo en ejecución de la sentencia a favor del Sr. Safar Halabi, sin haberse celebrado una vista previa donde cada una de las partes puedan presentar la prueba respecto a cada una de sus posturas.

**IV.**

Por los fundamentos anteriormente expuestos, se expide el auto de *certiorari*; se revoca la *Orden* revisada, se ordena la celebración de una vista sobre la solicitud de embargo en

aseguramiento de sentencia y se devuelve el caso al TPI para la continuación de los procedimientos cónsono con lo aquí dispuesto.

Al amparo de la **Regla 35 (A)(1) de nuestro Reglamento,** el Tribunal de Primera Instancia puede proceder de conformidad con lo aquí resuelto, sin que tenga que esperar por nuestro mandato.[28]

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[28] Regla 35 (A)(1): "La presentación de una solicitud de *certiorari* no suspenderá los procedimientos ante el Tribunal de Primera Instancia, salvo una orden en contrario expedida por iniciativa propia o a solicitud de parte por el Tribunal de Apelaciones. **La expedición del auto de *certiorari* suspenderá los procedimientos en el Tribunal de Primera Instancia, salvo que el Tribunal de Apelaciones disponga lo contrario**". 4 LPRA Ap. XXII-B R. 35.